IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN M. R. Jr.,[1]               )
                                 )
        Plaintiff,   )
                                 )
vs.                              ) Civil No. 17-cv-904-JPG-CJP
                                 )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
        Defendant.   )
                                 )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in September 2013, alleging disability beginning on August 24, 2013. After holding an evidentiary hearing, ALJ David G. Buell denied the application in a written decision dated August 22, 2016. (Tr. 10-29.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following point:

1.     The ALJ erred in giving too little weight to the opinion of his treating physician, Dr. Khaja Mohsin.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

## Applicable Legal Standards

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[2] The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but that the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing

---

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423 *et seq.* and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c *et seq.* and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, which details medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

*any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id*.; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## The Decision of the ALJ

ALJ Buell followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2015.[3] He found that plaintiff had severe impairments of degenerative disc disease, obesity, and anxiety disorder, which did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, with only occasional stooping, kneeling, crouching, and crawling; no exposure to hazards such as unprotected heights; and limited to simple work. Based on the testimony of a

---

[3] The date last insured is relevant only to the claim for DIB.

vocational expert (VE), the ALJ found that plaintiff could not do his past relevant work but that he was not disabled because he was able to do other jobs which exist in significant numbers in the local and national economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period. As he makes no argument regarding his mental limitations, a discussion of his mental health treatment is omitted.

1. **Agency Forms**

Plaintiff was born in 1971 and was almost 42 years old on the alleged onset date. A prior application for benefits had been denied in August 2013. (Tr. 232.) Plaintiff said he stopped working in June 2010 because of his condition. He had a third grade education. He had worked as a self-employed painter from 1995 through June 2010. (Tr. 236-37.)

In November 2013, plaintiff submitted a report stating that he was unable to work because he could not stand or sit for long and must lie down frequently. He took Percocet and Alprazolam, which made him uncoordinated, slowed his reaction time and sometimes made him dizzy or forgetful. He did no cooking or housework. His wife did everything. He needed a cane to keep his balance. The cane had been prescribed by a doctor about a year earlier. He used the cane "all the time." (Tr. 247-54.)

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in July 2016. (Tr. 48.)

Plaintiff testified that he hurt his back in an automobile accident and had back pain ever since. It had gotten worse over time. He took pain medication and muscle relaxers several times a day, as well as Xanax for anxiety. His medications made him very drowsy, and he slept for 30 to 60 minutes after

4

taking them. (Tr. 55-57.) He was 5'7" and weighed 218 pounds. (Tr. 61.) He lived with his wife and four children. His children ranged in age from 15 to 10. He did almost nothing around the house. (Tr. 63-65.)

A VE also testified. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment. The VE testified that this person could do the jobs of marker, collator operator, and counter attendant at the light exertional level. He could also do the jobs of cutter/paster, document preparer and polisher of eyeglass frames at the sedentary level. (Tr. 74-77.)

### 3. Medical Treatment

Dr. M. Khalid was plaintiff's primary care physician in 2012 and 2013. The first note is dated August 2, 2012. Plaintiff complained of chronic backache and neuropathic leg pain. He needed his medications refilled because his medications had been stolen from his hotel room. (Tr. 357.) Plaintiff saw him six more times through mid-May 2013. (Tr. 351-57.) Dr. Khalid prescribed Percocet (acetaminophen and oxycodone), which was changed to Vicodin at the last visit. In February 2013, Dr. Khalid advised him to see a neurosurgeon. (Tr. 354.) The next month, Dr. Khalid noted that plaintiff had not consulted a neurosurgeon and he "gets very hysterical when questioned and resisted discontinuation [of] any prescription of opiates." On exam, he was "very touchy" on his back and had bilateral muscle spasms. (Tr. 353.) An MRI was done on March 25, 2013. This showed minimal disc bulging at L4-5 with minimal neuroforaminal narrowing and slight change in appearance to the L5-S1 disc with protrusion superimposed on disc bulging and spur formation. (Tr. 359-60.) In May 2013, Dr. Khalid noted that he was scheduled to see a neurosurgeon. On exam, straight leg raising was "tender at 45 degrees." (Tr. 351.)

Plaintiff began seeing Dr. Khaja Mohsin as his primary care physician in August 2013. The notes are handwritten and difficult to decipher. At the first visit, he complained of low back pain and

5

left sciatic pain. He said he was afraid of having surgery because he was afraid of getting worse. Dr. Mohsin prescribed Percocet. (Tr. 384-86.) The next visit was on October 1, 2013. On exam, there was tenderness at L5-S1 and in the left buttock. At the bottom of the page, there is a note dated October 4, 2013: "called in Hydrocodone." (Tr. 383.)

Plaintiff saw Dr. Mohsin in January and June 2014. In June, he said he was going out of town and needed his prescription written out early. (Tr. 382, 387.)

Dr. Vittal Chapa performed a consultative physical examination in August 2014. (Tr. 399-402.) Plaintiff said he had pain in his low back radiating into the left buttock and leg. He was taking oxycodone 3 or 4 times a day. He walked with a limp on the left. On exam, he was able to appreciate pinprick sensations in both lower extremities. He had no paravertebral muscle spasms. Lumbosacral spine flexion was subjectively limited to 10 degrees. The exam was limited because plaintiff said he did not want to hurt himself by bending forward. Straight leg raising was negative to 70 degrees. Reflexes were symmetric and sensory examination was normal. Hand grip was full, and he could perform fine and gross manipulations with both hands. He had no muscle atrophy.

Plaintiff saw Dr. Mohsin eight times between September 2014 and December 2015. (Tr. 442-64.) He continued to prescribe Percocet. An MRI was scheduled in May 2015, but there is no record of it being done. (Tr. 448.) He was referred to pain management at "St. E's" but there are no records indicating that he was treated there. (Tr. 447.)

In March 2016, plaintiff was seen at Vista Medical Group in Mesa, Arizona.[4] He complained of chronic low back pain from "herniated discs." He took Percocet and Soma as needed with "good relief." On exam, he had tenderness to palpation in the low back, straightening of the lumbar lordosis, and limited range of motion due to pain. He had no neuropathy and sensory exam was intact. The

---

[4] Plaintiff spent about 2 months in Arizona visiting family. (Tr. 65.)

doctor prescribed Percocet and Soma, and referred him to pain management. He returned about three weeks later, asking that his prescriptions be refilled because he was going out of the state for a month. He had not gone to pain management. His prescriptions for Percocet and Soma were refilled, but the doctor said this would be the last refill. (Tr. 416-19.)

The next record is from the Dean Clinic in Wisconsin, dated May 24, 2016.[5] Plaintiff was there to establish care and follow up on his anxiety. Plaintiff said he had back pain since a car accident in 2013. He said he was taking 2 or 3 oxycodone a day and Soma at night for his low back pain. He said he could no longer work as a painter because he could not climb a ladder. On exam, he was tender across the low back and in the left sciatic notch. (Tr. 436-39.) He was prescribed Percocet again in June 2016 and signed a prescription drug management agreement with Dean Clinic. (Tr. 409, 413-15

### 4. Dr. Mohsin's opinion

Dr. Mohsin assessed plaintiff's ability to do work-related activities by filling out a form at the request of plaintiff's counsel in October 2013. (Tr. 406-08.) The directions at the beginning of the form include the following statement, in all capital letters:

> IT IS IMPORTANT THAT YOU RELATE PARTICULAR FINDINGS TO ANY ASSESSED REDUCTION IN CAPACITY; THE USEFULLNESS OF YOUR ASSESSMENT DEPENDS ON THE EXTENT TO WHICH YOU DO THIS.

Dr. Mohsin indicated that plaintiff could occasionally lift less than 15 pounds and could frequently lift 15 pounds. He could stand and/or walk for less than 1 hour at a time and for a total of 2 to 3 hours in a workday. He could sit for 1 hour at a time and for a total of 2 hours in a workday. He could frequently balance with a cane and never climb, stoop, crouch, kneel, or crawl. Dr. Mohsin indicated that the functions of reaching, handling, feeling, seeing, hearing, and speaking were all affected by his impairment, but pushing and pulling were not. In each section of the form, the doctor

---

[5] Plaintiff testified that his father-in-law lived in Wisconsin. (Tr. 54.)

was asked to identify the "medical findings that support this assessment." Dr. Mohsin did not identify any medical findings.

In November 2015, Dr. Mohsin signed a statement that the limitations set forth in the October 2013 statement remained the same. (Tr. 405.)

## Analysis

Plaintiff argues that Dr. Mohsin's opinion was entitled to significant if not controlling weight.

Obviously, the ALJ was not required to credit Dr. Mohsin's opinion even though he was a treating doctor; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted). A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

The ALJ is required to consider a number of factors in deciding how much weight to give to a treating doctor's opinion. The regulations refer to a treating healthcare provider as a "treating source." The applicable regulation, 20 C.F.R. § 404.1527(c)(2) (2016), provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.*

(emphasis added). In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with

8

substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(2)-(6) (2016). Supportability and consistency are two important factors to be considered in weighing medical opinions.

The ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, he or she may "bend over backwards" to help a patient obtain benefits. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006); *see also Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

When considered against this backdrop, the Court finds that the ALJ did not err in rejecting Dr. Mohsin's opinion. ALJ Buell gave the opinion "little weight." He pointed out that that there was nothing in the record to support the opinion that plaintiff was unable to stand/walk or sit long enough to complete an 8-hour workday, and Dr. Mohsin provided no support for that conclusion in his statement. The ALJ also noted that Dr. Mohsin assigned some "unlikely limits" such as limitations in seeing, hearing, and speaking, but not pushing and pulling. He concluded that the record as whole supported his RFC determination rather than Dr. Mohsin's restricted opinion.

Plaintiff argues that Dr. Mohsin's opinion about plaintiff's ability to stand/walk and sit is supported by his observations that plaintiff had positive tenderness at L5-S1 and hip pain. However, the doctor himself did not make that connection; he did not cite any findings in support of his opinion, although the form repeatedly asked him to do so. Tenderness in the low back does not automatically result in the inability work an 8-hour day at any job at all, as plaintiff seems to assume. Plaintiff also argues that the MRI results support Dr. Mohsin's opinion, but that is a medical conclusion that plaintiff and his attorney are not competent to draw. Dr. Mohsin himself did not mention the MRI. The only

doctor who did so was Dr. Khalid, and he decreased the dosage of plaintiff's pain medication because the MRI showed "not much pathological." (Tr. 351.) Similarly, plaintiff argues that the ALJ should have found that he was required to use a cane, but Dr. Mohsin's treatment notes never mention use of a cane. The only references to plaintiff needing a cane are from records that predate plaintiff's alleged date of onset. (Tr. 19, 21.) Those records also predate the denial of his prior application for benefits.

In short, Dr. Mohsin's opinion is not supported by his own findings and is inconsistent with Dr. Chapa's findings and with the other treatment records. It is even inconsistent with plaintiff's own allegations in that the doctor opined that he has limitations in areas that plaintiff does not claim. An ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of another physician, internally inconsistent, or inconsistent with other evidence in the record. *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Further, in light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit Court of Appeals has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The Court finds that ALJ Buell easily met the minimal articulation standard here.

This is not a case in which the ALJ failed to discuss evidence favorable to the plaintiff or misconstrued the medical evidence. Rather, after reviewing the medical evidence in detail, the ALJ concluded that Dr. Mohsin's opinion was contrary to the rest of the evidence. Plaintiff has not identified a sufficient reason to overturn that conclusion.

Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial

evidence.  *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d at 413.

## **Conclusion**

After careful review of the record as a whole, the Court is convinced that ALJ Buell committed no error of law, and that his findings are supported by substantial evidence.  Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for benefits is **AFFIRMED.**  The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE:   June 15, 2018**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**